It was a cause, not the only cause, for the debilitating condition. And it was prior to the physician, Dr. Norman, it was uncritical that, and there were medical evidence to that extent, that her condition prior to the accident was pretty moderate. It was a little swollen, but not very much. But then, after the accident, she cleared up dramatically, considerably, and there's no dispute that that's actually what happened to her. She got dialysis. She had to be administered more powerful medicines. She had surgeries. She had extensive therapy. She never did work again. So the general rule, as you know, it's up to the commission to resolve inconsistencies in the evidence, assign weight to the evidence. And how do we – are you asking us to substitute our judgment for the commission's on those elements? I'm not asking the court to substitute its judgment. What I'm saying is that the evidence I'm trying to issue is a dispute with Bitter, that a commission got much, much worse evidence than it was before. And the overwhelming weight of the manifest weight shows that what the commission did get was a legal standard. It's whether or not the accident was a contributing cause, not just the primary or only cause, but a contributing cause. The overwhelming weight of the evidence here is that. In fact, we've got substantial evidence. Time is up. Time is up. Time is up. Counsel, please. Good morning, Your Honors. Debra Benzing on behalf of Respondent Appelique Holmes-Fighten. This case involves an appeal of factional determinations made by the Illinois Workers' Compensation Commission and affirmed by the circuit court as to the injuries sustained and to the nature and extent of the disability and the injuries. The appropriate standard of review in this case is manifest weight of the evidence. As this court well knows, a reviewing court may not overturn a decision of a commission unless the decision is based on factional determinations, which are against the manifest weight of the evidence. What is your response to your opponent's statement that the commission had a duty to explain the rationale for deviation from the judgment of the arbitrator? The commission's decision as to the decision made, the commission made numerous factional decisions in this matter. They are well supported in their decision. For example, the commission found that the specific injuries that were related to the July 14, 1989 accident were limited to the right shoulder, the right hand, and a nasal fracture. The right shoulder was a dislocation and an emulsion fracture of the femoral head. There was a nasal fracture and a monocarpal tunnel as to the right wrist. Those were the only specific injuries found by the Workers' Conversation Commission as to that related to the July 14, 1989 accident. I don't know if you answered his question. What is your position in response to opposing counsel's argument that the commission, in order to overrule or depart from the arbitrator's findings, had to provide an explanation or a rationale for doing so? Do they have to do that? The commission exercises original jurisdiction. They have no overview. They can review the evidence in the record and make their own determinations based on the evidence in the records, the medical evidence, the inconsistencies noted in the testimony. They do not substitute. It is to know the review. They exercise original jurisdiction. I'm sorry, did that answer the question? Sorry about that. Petitioner attempts to create questions of law. One, with respect to the injuries that are related to the July 14, 1989 accident. Respondent raises a labor issue as to the apportionment issue in our brief. But, irrespective of that, I would still like to address that issue because I think it's important in this case. Petitioner attempts to make a question of law as to the injuries related based on apportionment issues. Petitioner cites the Fitts v. Industrial Commission case. The Fitts case, in that case there was a petitioner who had an underlying condition of emphysema and asthma. The case involved alleged exposure to coal dust. What happened in that case was the court apportioned a percentage of the disability as to the occupational exposure and apportioned the disability as to the underlying condition. That didn't happen in this case. In this case, the rheumatoid arthritis, which is the pre-existing condition, was found not to be related to the July 14, 1989 accident. It was not related. It was not accelerated. It was not exacerbated. So there's no apportionment issue in this matter. The Commission's decision is well supported by medical evidence for this matter. First of all, the emergency room records from Sherman Hospital document that immediately after the accident, the only injuries that were reported in the emergency room were to the right shoulder and the nasal fracture. Further, look at the record as to the rheumatoid arthritis and prior treatment. The counselor keeps referring to she was the biggest human being and was able to work prior to July 14, 1989. Look at the record. She treated for debilitating rheumatoid arthritis since 1978. She had prior bilateral hip replacement. She had a prior revision of the right hip. She had numerous surgeries, injections, therapy, and her own treating rheumatologist testified in this case that the dosages of her medicine increased and decreased both prior to July 14, 1989 as well as after July 14, 1989. There was no change in that. Look at the testimony of the physicians in this matter. Dr. Peterson, one of her treating physicians, indicated that he could not provide a causal connection as to anything other than the right shoulder and the right wrist. Look, there's an independent medical examining physician, Dr. Robert Katz, a well-known rheumatologist in the Chicago area. He testified that this accident did not accelerate or exacerbate rheumatoid arthritis. Further, then, look at the testimony of the petitioner's own treating rheumatologist, Dr. Walter Dorman. Dr. Dorman gave a deposition in the civil case in 1994, and he testified that the July 14, 1989 accident did not exacerbate or accelerate the rheumatoid arthritis. Then he gave a deposition in this case in 1999, five years later, and said, oh, wait a minute, I changed my mind. I think maybe that it did because her rheumatoid arthritis was well under control prior to July 14, 1989. But we know that's not the case. Look at the luminous medical records with respect to her treatment for rheumatoid arthritis prior to the date of accident. Based on the medical testimony and the testimony of the treating physician as well as the examining physician, the commission is correct in relating only three injuries, the right shoulder, the nasal fracture, and the carpal tunnel. Then the question goes to what is the appropriate amount of temporary total disability benefits awarded in this matter? The petitioner tries to create a question of law on this issue as well. However, this again is a factual determination, and the appropriate standard is manifest way of the evidence. We know that the petitioner initially treated with the rheum while she initially sought emergency treatment here in Illinois. She then went back to Minnesota where she started treating with Dr. Dorman, her rheumatologist, who referred her to Dr. Sundberg, an orthopedic physician. Dr. Sundberg saw her on September 14, 1989, and released her from treatment after the right shoulder at that time. She was to return on an as-ended basis only. On October 12, she went back and saw Dr. Sundberg again for the right shoulder at that time and said, Go ahead. Resume your golfing activities. She then also at that time, she complained of some pain in her right forearm, so he referred her to Dr. Minette, a neurologist. Dr. Minette diagnosed her with a brachial plexopathy. Dr. Minette, on January 22, 1990, released her to light duty work. That light duty work entailed four hours a day and no heavy lifting. Then the next notes we have in the records are from Dr. Dorman on March 19, 1990, indicating that the right shoulder moves through full and complete range of motion. Then we see in Dr. Dorman's notes from April 1, 1991, the petitioner had actually returned to work at that time. She had accepted a position in real estate in the Chicago area, but had moved back to Minnesota because the position was financially risky. There is nowhere in the record that she couldn't perform that job because of any type of medical condition. So as to the TTD, petitioner failed to prove the duration of her disability because we have an off work slope or light duty restriction from Dr. Minette. From January 22, 1990, she didn't go back to see Dr. Minette until December 8, 1993. That's almost four years later. There was nothing in the records to support any type of off work during that period of time other than that initial note. And the petitioner did not prove her case that she was entitled to temporary disability benefits during that time. The commission also noted in its decision that she may have been entitled to additional TTD after the three shoulder surgeries. One was in 1993, one was in 1994, one was in 1995. However, there were never any off work authorizations introduced into evidence after the shoulder surgeries. Therefore, how can anyone, how can the commission award TTD if there's no evidence to support it at? I suggest that the Illinois Workers' Compensation Commission make a factual determination. There was nothing in the records to support that she was entitled to temporary total disability other than what was awarded. From the date of accident through January 22, 1990, that's a factual determination. It's supported by the evidence. It's not against the man's way of the evidence. And it is in no way a question of law because petitioner failed to prove that she was entitled to any additional benefits. There is no question of law on that. Respondent asks that this honorable court affirm the decision of the circuit court in the Illinois Workers' Compensation matter and apply the manifest way standard of review. Thank you. I didn't notice your name on the briefs. You work for this law firm? Yes, I do, Your Honor. I was not involved in the trial for the briefs. Thank you. Thank you, Your Honor. The file, please. Counsel referred to the Fitts case. I'm a large part of the Fitts case, as well, for the improper portion of the argument. Specifically, the Fitts case is any reduction in work because of apportionment between employment and non-employment causes of disability is improper, contrary to the law. But where's the apportionment? Well, what happened is the commission found a causal relationship. You seem to suggest that because they found a causal relationship for one injury but not another, that that's an apportionment. That's not an apportionment. An apportionment is the same injury. A portion of it having been caused by work-related issues, and a portion of it arguably not. And they're not allowed an apportionment. You're saying her total well-being, her body? Oh, no, we're not considering her total well-being. We're considering injuries to certain portions of her body that relate to an accident at work, and injuries for arthritis that don't relate to it, or rheumatism. So, I mean, I don't understand where this apportionment comes from. No, because if an individual has built-in injuries, and some of them are in one way related, and some are not in one way related, and she has it. It's understood she has a disability because of the built-in injuries. See, this is where injuries, rheumatoid arthritis is not an injury. It's a condition. See, back to Justice Hoffman's observation, they found an injury, and they specified what those injuries were. They said not rheumatoid arthritis. Right, they said not rheumatoid arthritis. But as regards to her condition as a whole, she suffered from a very debilitating condition. Some of them are point-related. Some of them are not. Point-related conditions are analysis. Once you get past causation, which she kind of did, because it's understood that she did prove causation here, the question shifts to something other than causation. The question shifts to whether or not she achieved maximum medical improvement. It occurs to me that your whole argument is based on the fact that the commission did not say in the paragraph when they reduced that they found that she had reached maximum medical improvement as of January 20, 1990. They didn't use those magic words. No, no, that's not what I'm relying on. They actually made a finding, which I cited in my brief. I asked the court to take a look at the explicit linkage, the explicit language, page 22 of my brief. It says, based upon the commission's finding of the petition, and I see 99 to 100 on the record. Based upon the commission's finding of the petition, failed to prove the causal connection between such and such, the commission further finds the petitioner is only entitled to DTD from July 14, 1989 through January 22, 1999. So it's not just that they failed to use explicit language. It's that they explicitly put clear-cut language in the commission's order. Look, I think your confusion surrounds the fact that you don't understand that apportionment relates to a single, indivisible injury. This is not a single, indivisible injury. These are two separate injuries or conditions. They are giving her workers' compensation benefits for those injuries that she sustained that arose out of in the course of her employment, and they are denying her benefits for a condition that did not arise out of in the course of her employment. They are two separate injuries and conditions. They're not a single – your asthma case, a person suffers from asthma, they go to work someplace, and they're required to breathe in fumes, and it makes their asthma worse. It's the same condition. And the court says, and we've said, you cannot apportion it between the work-related portion and the non-work-related portion. You have two separate injuries or conditions here. And that's what I don't think you understand. Counsel, your time is up. The court will take the matter under advisory for disposition. Clerk, please call the next case.